IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LARRY J DUANE SPENCER,

                  Plaintiff,

     v.

JOSEPH L. SOMMERS, ANN SAYLES,
STUART A. SCHWARTZ, DAVID KNOLL,
CHRISTOPHER DUREN, PAUL NESSON JR,
TIMOTHY DAVID EDWARDS, JENNIFER HARPER,
GREGORY DUTCH, STAN KAUFMAN,
JAY LAUFENBERG, MARY JONES,
FRANK EARL RADCLIFF, ROY U. SCHENK,
CINDY S. GEOFFREY, MELISSA HARNESS,
JOHN RADOVAN, ROSA I AGUILU,
BRIAN BLANCHARD, GARY H. HAMBLIN,
JOHN PIER ROEMER, KAREN KRUGGER,
MARIANNE SIMPSON, ANA M. BOATWRIGHT,
TAMMY J. SIME, MS BURNS, MS RICHARDSON,
RANDALL HEPP, NANCEY GANTHER,
CAPT. KANNANBERG, CAPT GUARCEAU,
MR JAEGER, MS TEGELS, C.O. KRATKY,
SANDY K. MAGUIR-PETKE, C.O. RYBUCK, MS RICK,
TERRY L. SHUK, C.O. CORBIN, DAWON JONES,
JAMES ISAACSON, ROY LA BARTON GAY,
D.O. WATSON, TODD E. MEURER,
PEGGY L. NICHOLES, STACEY A. BIRCH,
BRENDA L. PETERSON, SHEILA D. PATTEN,
DOCTOR HANNULA, MR SWEENEY, GOVERNOR
DOYLE, Sec. RICK RAEMISCH, Atty. General J.B. VAN
HOLLEN, JEFFREY PUGH and JOHN DOE,

                  Defendants.

ORDER

10-cv-288-bbc

1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In an order entered November 30, 2010, I told plaintiff Larry J. Duane Spencer that his amended complaint violated Rules 8 and 20 of the Federal Rules of Civil Procedure and gave him a chance to file a second amended complaint that addresses those problems. I also noted that some of plaintiff's claims would likely have to be dismissed because they involved challenges to his confinement or convictions and would therefore have to be addressed in a habeas corpus action brought under 28 U.S.C. § 2254 after plaintiff exhausted his state remedies. Plaintiff has filed a second amended complaint that attempts to address the problems I described in the November 30 order and has moved to "separate" some of the named defendants into a habeas corpus action. (He also filed a petition for a writ of habeas corpus, which has now been docketed in <u>Spencer v. Pugh</u>, Case No. 11-cv-09, a new habeas case.)

Plaintiff's second amended complaint continues to have problems. However, it is better than the amended complaint. Some of plaintiff's claims are now understandable enough to show they lack merit and must be dismissed. Other claims continue to suffer from Rule 8 problems, and the complaint still includes many different claims against many different individuals in violation of Rule 20. Plaintiff may have one more chance to fix these problems. He may file a third amended complaint that addresses the Rule 8 problems, at which time I will explain to plaintiff which of the many different claims remaining in his case can be grouped together into a single lawsuit so he may decide which group he wishes to

2

pursue in this case and which group or groups he wishes to pursue in new cases.

## A. Claims Lacking Merit

Plaintiff has made some progress in describing his claims in enough detail to put defendants on notice of his claims. At the same time, this has only made it clear that certain claims must be dismissed.

### 1. Unnamed individuals and unmentioned defendants

Plaintiff's second amended complaint includes allegations against individuals he has not named as defendants. These include: Dressler, Voeks, Buesquen, Milbeck, Langteau, the "Governor [of Wisconsin] before [Doyle]" and Kevin Potter. Plaintiff cannot proceed on any claims against these individuals because they are not defendants.

On the other hand, plaintiff names several people in the caption of his complaint that he does not mention at all in his allegations. These include: Randall Hepp, Nancey Ganther, Ms. Tegels, C.O. Kratky, Terry L. Shuk, James Isaacson, Roy La Barton Gay, D.O. Watson, Todd E. Meurer, Peggy L. Nicholes, Stacey A. Birch, Brenda L. Peterson and Sheila D. Patten. Without any allegations to support his claim, plaintiff cannot pursue a lawsuit against these defendants. (Also, plaintiff has moved to withdraw his claims against those defendants whose alleged wrongdoings relate to plaintiff's state habeas claim. Those defendants will also be dismissed.)

2. <u>Supervisory defendants</u>

For a number of defendants, plaintiff's sole rationale for pursuing a § 1983 claim against them is for their role as supervisor. Plaintiff contends that he sent defendants Governor Doyle and Rick Raemisch letters complaining about his conditions of confinement (he doesn't say which conditions), but neither responded. In addition, plaintiff says that defendant Sandy K. Maguir-Pete was told about the acts of a loan officer she supervised but did not stop that officer from interfering in his cases and that he sent defendants Capt. Kannanberg, Capt. Garceau and Ms. Rick letters about his problems but they did not respond. (Plaintiff also contends that the "Governor before [Doyle]" and Kevin Potter received letters but did not act; however, he has not named these individuals as defendants.)

Actions under § 1983 cannot be brought against individuals for their supervisory role over others. To state a viable claim, a plaintiff must allege the personal involvement of each defendant in a constitutional violation. As the Supreme Court explained recently in <u>Aschroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009), a supervisor's mere "knowledge and acquiescence" of their subordinates' unconstitutional acts is not sufficient to hold the supervisor liable for a constitutional violation. Instead, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Id.</u> Under § 1983, there is no requirement that the governor or other higher-ups in the prison step outside their roles in the bureaucracy to intervene on behalf of an individual prisoner writing them letters. The Court of Appeals for the Seventh Circuit has addressed this very point:

4

> [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009).

This does not mean a prison official is never liable when failing to respond to allegations of wrongdoing; what is required is that the failure show a "deliberate or reckless disregard of the plaintiff's constitutional rights" on the part of the supervisor. Miller v. Smith, 220 F.3d 491, 495 (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). The allegations do not imply that Doyle, Raemisch, Maguir-Pete, Kannanberg, Garceau or Rick acted with "reckless disregard" of any constitutional right of plaintiff's. Plaintiff's sole complaint about these defendants is their role as a supervisor of allegedly bad actors.

3. Post-filing claims

In addition, plaintiff adds several claims in his second amended complaint that were not raised in his original complaint because the events underlying them occurred after he filed the complaint. These include claims that defendant Jeffrey Pugh denied plaintiff access to his files or a computer or copier, that defendants Pugh and Ms. Richardson failed to disburse funds to help initiate this lawsuit in a timely manner, that defendant Sime refused to copy certain documents of plaintiff's, that defendant Hannula rejected plaintiff's request

5

for a prescription for a calcium dissolver (for plaintiff's heart) and that defendant Sweeney saw plaintiff have his canteen taken away in punishment for filing his amended complaint.

These claims cannot proceed in this lawsuit. In <u>Perez v. Wisconsin Dept. of Corrections</u>, 182 F.3d 532, 535 (7th Cir. 1999), the Court of Appeals for the Seventh Circuit held that a claim brought in federal court by a prisoner must be dismissed if it is filed before administrative remedies have been exhausted. A district court lacks "discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." <u>Id.</u> It would have been impossible for plaintiff to exhaust his administrative remedies before filing his lawsuit on claims that did not arise until after he filed his lawsuit.

This court has recognized an exception, allowing retaliation claims to be brought within the same lawsuit for which the retaliation is occurring, but only if it appears that the alleged retaliation would directly, physically impair the plaintiff's ability to prosecute his lawsuit. Nothing in plaintiff's amended complaint supports a conclusion that he is being physically prevented from prosecuting this lawsuit. Nothing about the alleged calcium disorder, loss of files, computer and copier access, loss of canteen or the problems with processing his initial partial payment in this case suggests that plaintiff is being prevented from prosecuting this lawsuit. This is made clear by the fact that although this case has yet to get past screening, plaintiff has already filed more than 40 separate documents, some with as many as 8 exhibits. Nothing about plaintiff's alleged ongoing difficulties with prison officials seems to have slowed him down. None of the claims related to acts occurring after

6

plaintiff filed his original complaint will be allowed to proceed.

4. Interference with plaintiff's attempt to exhaust remedies

In particular, a number of plaintiff's claims relate to different ways certain defendants were denying plaintiff access to the courts: (1) interfering with his ability to participate in a John Doe proceeding; (2) preventing him from exhausting his administrative remedies by interfering with the inmate complaint process; and (3) preventing him from exhausting his state court remedies so that he might pursue a state habeas challenge. These claims cannot proceed.

First, a prisoner enjoys a limited constitutional right to "meaningful access to the courts." Bounds v. Smith, 430 U.S. 817, 821-22 (1977). This right does not

> guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools [that the law] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996) (citation omitted). Because a prisoner's right to access to the courts is limited to challenges to their sentences and confinement, it does not include the right to participate in a John Doe proceeding against a third party. Because the John Doe proceeding plaintiff identifies is one in which he is an alleged victim, not a potential defendant, no constitutional claim can arise from prison officials' alleged

7

interference in plaintiff's attempts to participate in that proceeding.

Next, for any claim of denial of access to courts, a plaintiff must show an "actual injury" in the form of interference with an underlying claim. Lewis, 518 U.S. at 353. A claim for access to the courts may be forward-looking, for a lawsuit yet to be litigated, or backward-looking, for a chance to sue that has already been lost. Christopher v. Harbury, 536 U.S. 403, 413-14 (2002). For backward-looking claims, a plaintiff must show that the defendants caused the plaintiff to lose a meritorious claim or a chance to sue on a meritorious claim. Id. at 414. To state a claim for backward-looking denial of access to the courts, a plaintiff must at least describe the underlying claim and explain how it has been lost or impeded. Id. at 415-16.

Plaintiff does not explain how any potential civil rights lawsuit or state habeas case has been lost or impeded. Instead, he says only that certain defendants have interfered with his attempt to complete steps required to satisfy exhaustion requirements for each such lawsuit. Thus, plaintiff says that certain defendants prevented him from pursuing the grievance process (which is usually required to pursue civil claims against defendants) and certain defendants interfered with his attempts to exhaust state remedies (which is required to pursue a habeas suit).

Although plaintiff has alleged that defendants have tried to interfere with his cases, these cases have not been "impeded." When a prisoner cannot take the required steps to exhaust his administrative remedies or his state remedies because prison officials are

8

interfering, any challenge based on exhaustion is bound to fail. Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006) (prisoners not required to exhaust administrative remedies that are not "available" to an inmate, including when prison officials prevent inmates from exhausting); Johnson v. Thurmer, 624 F.3d 786, 789 (7th Cir. 2010) (habeas petitioner who failed to exhaust can still proceed on claims if he can show "cause for the default and prejudice attributable thereto"). Thus, to the extent plaintiff can show defendants have undermined his attempts to exhaust administrative and state remedies, the underlying cases have not been "impeded." Plaintiff should be able to present evidence of defendants' alleged interference in the underlying § 1983 or habeas case to defeat any argument that his cases should be dismissed for failure to exhaust. At any rate, plaintiff is likely to find that the most effective relief from defendants' alleged interference will be that provided in the underlying cases. Christopher v. Harbury, 536 U.S. 403, 415 (2002) (petitioners are usually better served attempting to raise access to courts concerns in the context of underlying case first).

In light of these limitations on plaintiff's right to access to the courts, plaintiff cannot proceed on the following claims:

a. Judge Roemer failed to call him back to testify in a John Doe proceeding;

b. defendant Simpson refused his request for disbursement for a conduct report and refused to authorize a disbursement related to a John Doe proceeding;

c. defendant Sime obstructed plaintiff's attempts to exhaust his administrative remedies; and

9

d. defendant Burns and Richardson worked together to reject or dismiss inmate complaints and withheld evidence against Sime.

Plaintiff's access to the court claims focus on how defendants have undermined his ability to "exhaust," suggesting that plaintiff's concern is his ability to pursue the federal civil rights and habeas cases requiring exhaustion.  At the same time, in the context of describing alleged interference with his attempts to exhaust state remedies, plaintiff identifies several state court cases he says were dismissed as a result of defendants' alleged interference.  In particular, he says that defendants interfered with his attempts to pursue relief in the following Wisconsin cases:  01-CF-1125, 01-CF-1242, 07-CV-3458, 09-IP-28 and 08-AP-770 and that these cases were "dismissed."  (Some of the cases are criminal cases that led to convictions; I do not think plaintiff is suggesting that these cases were actually "dismissed," but rather that his request for particular relief within the case was denied.)  Plaintiff may have an independent right of access to the courts in any of these cases, so he may be able to pursue a claim that his access to one or more of these particular state court cases was impeded.

B.  <u>Ongoing Rule 8 Problems</u>

Even after plaintiff's complaint is trimmed of defective claims as described above, it continues to violate Rule 8 and Rule 20.  First, with respect to the Rule 8 problems, once again plaintiff fails to provide enough detail about what certain defendants have done to

violate his rights. For example, plaintiff complains generally that defendants Krugger and Simpson denied him the ability to exhaust his state court remedies, but he does not explain how. At most, it is possible to infer that Krugger and Simpson may have prevented him from obtaining legal loans he wanted to use to litigate his open state law cases. Even so, plaintiff does not explain why he thinks these defendants blocked him from receiving loans and how his lack of loans affected any of the state law cases he identifies as having been dismissed. For example, he does not say that he needed to file something by a certain date that he could not without materials or that a late filing caused by lack of loans led to dismissal of his case.

Plaintiff cannot simply list his cases, say they were all dismissed, and point to particular defendants who have denied him loans or otherwise made his litigation more difficult. He needs to allege facts suggesting that the alleged obstacles these defendants placed in his way are the ones that led to dismissal or some other prejudicial decision against him in a particular case of his.

Plaintiff does a little better against defendant Mr. Jaeger, who he says did not respond to four letters he sent to him and who was then ordered to "make a separate complaint in Dane Co. Cir. Ct. Case 09-IP-28." Even so, although plaintiff identifies a case number and explains what Mr. Jaeger did, he does not explain how Jaeger's actions harmed his case. If anything, it appears Jaeger's alleged failure to act did not harm the case, which was apparently opened despite Jaeger's alleged initial inactivity.

Because there are still many Rule 8 problems in plaintiff's complaint, I will not allow

11

the case to proceed. Instead, plaintiff will be given one more opportunity to fix those Rule 8 problems by filing a third amended complaint with enough description about what each defendant did and how it affected plaintiff that each defendant is put on notice of plaintiff's claim against him or her. This may be plaintiff's last opportunity to fix Rule 8 problems, so he should be very careful when describing his claims.

Although I have given a couple of examples of the Rule 8 problems remaining in plaintiff's complaint, I will not address each of plaintiff's claims one-by-one to point out the Rule 8 problems in each. Plaintiff should be able to consider each one himself, asking himself whether he has explained what each defendant did and how it affected plaintiff. Plaintiff may find it useful to make a checklist for each defendant asking:

- What did that defendant do?
- What do I think defendant knew about my situation and why do I think that?
- How did that defendant's actions affect me?

That way plaintiff makes sure he provides enough detail about each claim to put each defendant on notice of plaintiff's claim against him or her.

Plaintiff should keep in mind that *labeling* what defendants did is not the same as *describing* it. "Defendant X interfered with my ability to proceed in my lawsuit" is labeling what was done; "defendant X refused to mail out my brief in opposition until after the deadline passed and then the judge dismissed my case for my failure to timely oppose the motion" is describing it. Plaintiff needs to do more describing and less labeling.

12

### C. Rule 20 Concerns

Despite the fact that Rule 8 problems persist in many of the remaining claims, the shape of these claims is sufficiently clear to start addressing Rule 20 concerns that are present. Plaintiff thinks all his claims can be linked together as part of the same series of transactions under Rule 20, but he is mistaken. Rule 20 provides that multiple defendants may be sued together when the injuries each defendant allegedly caused plaintiff arise out of "the same transaction, occurrence, or series of transactions or occurrences" and there is "any question of law or fact common to all defendants." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); 3A Moore's Federal Practice ¶ 20.06, at 2036-2045 (2d ed. 1978). Generally, under Rule 20 a plaintiff may not bring a single lawsuit against different defendants involved in different incidents. One exception to this is provided in Rule 18, which allows a plaintiff to join unrelated claims against any defendant already in the case. In this case, the remaining claims are as follows:

1. Defendants Karen Krugger and Marianne Simpson interfered with plaintiff's ability to proceed in one or more state court cases;

2. Defendant Krugger published a conduct report against another prisoner revealing plaintiff as the "snitch" of the report;

3. Defendant Simpson lied about whether certain evidence would be returned to plaintiff;

4. Defendant Mr. Jaeger obstructed plaintiff's ability to proceed in one or more state court cases;

5. Defendant Jaeger wrote a false conduct report against plaintiff;

    6.      Defendant Boatwright refused to provide plaintiff a different advocate at a hearing;

    7.      Defendant Boatwright falsely stated that plaintiff's cases were closed and ordered plaintiff's legal files removed;

    8.      Defendant C.O. Rybuck lost plaintiff's money and legal files by "sending" them;

    9.      Defendant Rubyuck placed plaintiff in hard cuffs;

    10.      Defendant Sime interfered with plaintiff's ability to pursue one or more of his state court cases;

    11.      Defendant Hannula denied plaintiff a prescription for soft cuffs;

    12.      Defendant Hannula denied plaintiff a prescription for a soft mattress or a foam pad or comfortable chair;

    13.      Defendant Sweeney denied plaintiff a second mattress;

    14.      Defendant C.O. Corbin denied plaintiff a chance to eat early or "up front" despite plaintiff's lack of teeth;

    15.      Defendant Corbin used hard cuffs on plaintiff;

    16.      Defendant Corbin unlocked plaintiff's locker and gave his coffee away; and

    17.      Defendant Dawon Jones took plaintiff's coffee.

Some of these claims can be joined with others, either because they are part of the same series of transactions or because they involve the same defendant, but nothing would warrant stringing together all these different claims about different people and problems into a single lawsuit. Plaintiff makes vague, conclusory statements in an effort to combine his cases, but

his effort falls short. In particular, plaintiff says there was a conspiracy among defendants because defendant Boatwright told defendant Simpson that plaintiff's cases were closed and Simpson told plaintiff he needed to show her a judge's order before she would provide a disbursement for making copies of that order. These allegations do not suggest a conspiracy.

Often, it is possible to explain to a plaintiff with Rule 20 problems which of his claims can be joined together into separate lawsuits so that he can choose which of the different possible lawsuits he wants to pursue in this case and which he wants to pursue in new lawsuits. In this case, it is not quite possible to do so because the Rule 8 problems underlying many of his claims also make it difficult to tell whether one or more of these claims are part of a single series of transactions. This is especially so with respect to plaintiff's claims that certain defendants interfered with his ability to pursue his state court lawsuits. It is not clear which of these alleged defendants interfered with which cases and in which ways. Until that much is explained, it remains impossible to determine whether those cases can be joined.

Another reason it is difficult to determine how plaintiff's claims should be joined is that there appear to be multiple possible ways to join the claims. For example, plaintiff says Hannula provided inadequate health care, but he also failed to protect him from the harm caused by hard cuffs. Allegedly, C.O. Corbin used hard cuffs instead of soft cuffs on plaintiff, but he also refused to allow plaintiff to eat early despite plaintiff's lack of teeth. Others also allegedly used hard cuffs on plaintiff. Plaintiff may have to decide whether he

15

wants to sue in one lawsuit all those involved in giving him hard cuffs, or he may want to sue Hannula for all his claims in one lawsuit and Corbin for all his claims in another lawsuit. These are difficult questions, but they need not be addressed at this point. Plaintiff should focus on answering the Rule 8 problems first. If plaintiff can submit a third amended complaint that satisfies Rule 8 problems, I will make a determination about which claims may be joined under Rule 20 and plaintiff can choose his lawsuits at that time.

Plaintiff may have until February 3, 2011 to file a third amended complaint that complies with Rule 8. If he fails to do so, his complaint will be dismissed for failure to state a claim upon which relief may be granted.


ORDER

IT IS ORDERED that

1. The following claims filed by plaintiff Larry Spencer are DISMISSED as premature for plaintiff's failure to exhaust administrative remedies before filing:

> a. that defendant Jeffrey Pugh denied plaintiff access to his files or a computer or copier;
>
> b. that defendants Pugh and Ms. Richardson failed to disburse funds to help initiate this lawsuit in a timely manner;
>
> c. that defendant Sime refused to copy certain documents of plaintiffs;
>
> d. that defendant Hannula rejected his request for a prescription for a calcium dissolver (for plaintiff's heart); and

    e.  that defendant Sweeney saw plaintiff have his canteen taken away in punishment for filing his amended complaint.

 2.  The following claims of plaintiff's are dismissed for his failure to show any "injury":

    a.  that Judge Roemer failed to call him back to testify in a John Doe proceeding;

    b.  that defendant Simpson refused his request for disbursement for a conduct report and refused to authorize a disbursement related to a John Doe proceeding;

    c.  that defendant Sime obstructed plaintiff's attempts to exhaust his administrative remedies; and

    d.  that defendant Burns and Richardson worked together to reject or dismiss inmate complaints and withheld evidence against Sime.

 3.  Defendants Joseph L. Sommers, Ann Sayles, Stuart A. Schwartz, David Knoll, Christopher Duren, Paul Nesson Jr. Timothy David Edwards, Jennifer Harper, Gregory Dutch, Stan Kaufman, Jay Laufenberg, Mary Jones, Frank Earl Radcliff, Roy U. Schenk, Cindy S. Goeffrey, Melissa Harness, John Radovan, Rosa I. Aguilu, Brian Blanchard, Gary Hamblin, Governor Doyle, Rick Raemisch, Sandy K. Maguir-Pete, Capt. Kannanberg, Capt. Garceau, Ms. Rick, Randall Hepp, Nancey Ganther, Ms. Tegels, C.O. Kratky, Terry L. Shuk, James Isaacson, Roy La Barton Gay, D.O. Watson, Todd E. Meurer, Peggy L. Nicholes, Stacey A. Birch, Brenda L. Peterson, Sheila D. Patten, John Pier Roemer, Ms. Burns and Ms. Richardson are dismissed from this lawsuit.

 4.  Plaintiff Larry Spencer's complaint is DISMISSED for its failure to comply with

Rules 8 and 20. Plaintiff may have until February 3, 2011 in which to file a third amended complaint that complies with Fed. R. Civ. P. 8. If he fails to do so, his action will be dismissed for his failure to state a claim upon which relief may be granted and a strike will be assessed against him.

Entered this 13th day of January, 2011.

                                  BY THE COURT:
                                  /s/
                                  BARBARA B. CRABB
                                  District Judge